**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ABRAO DEALMEIDA, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 3:25-cv-433 |
| | ) | |
| v. | ) | Judge Stephanie L. Haines |
| | ) | Magistrate Judge Patricia L. Dodge |
| KRISTI NOEM, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

**REPORT AND RECOMMENDATION**

**I.      RECOMMENDATION**

Before the Court is the counseled Petition for a Writ of Habeas Corpus (ECF 1) filed by Abrao DeAlmeida ("Petitioner") under 28 U.S.C. § 2241. He alleges that the length of his post-removal detention is unlawful under *Zadvydas v. Davis*, 533 U.S. 678 (2001) because there is no significant likelihood that his removal will occur in the reasonably foreseeable future.

It is respectfully recommended that the Court grant the Petition, order Respondents to release Petitioner to a restored order of supervision, and close this case.

**II.     REPORT**

A.  Relevant Background

According to Respondents, Petitioner is a native and citizen of Angola. (Resp's Ex. A, ¶ 2, ECF 6-1 at 1.) He was born in a refugee camp in Botswana. In 1982, he entered the United States as an infant with his family and became a permanent resident. (Pet's Ex. 3, ¶ 9, ECF 10-2 at 2); *see also DeAlmeida v. Att'y Gen. of U.S.* , 240 F. App'x 963, 964 (3d Cir. 2007).

At some point prior to 2004, Petitioner was convicted of possession of heroin with intent to deliver. *DeAlmeida*, 240 F. App'x at 964. For this reason, the United States "initiated removal proceedings against [Petitioner]." *Id.* An Immigration Judge ("IJ") denied Petitioner's request for

1

withholding of removal but granted relief under the Convention Against Torture ("CAT"). *Id.* The United States appealed, and the Board of Immigration Appeals sustained the appeal, finding that Petitioner did not present sufficient evidence to sustain his burden under the CAT. *Id.*

On August 24, 2004, an IJ ordered that Petitioner be removed to Angola. (Resp's Ex. A., ¶ 3, ECF 6-1 at 1.) The Court of Appeals denied Petitioner's subsequent petition for review of the removal order. *DeAlmeida*, 240 F. App'x at 964-65.

Petitioner was not removed at this time and instead, in 2005, was placed on an order of supervision. (Pet's Ex. 5, ECF 10-4 at 1-6.) He remained in the United States and under that order of supervision for the 20 years. Then, on September 9, 2025, ICE officers took Petitioner into custody pursuant to the 2004 order of removal. (Resp's Ex. A, ¶ 6, ECF 6-1 at 1.)[1] Petitioner has been in continuous custody since that date, and is being detained at the Moshannon Valley Processing Center ("Moshannon"), which is located within the territorial boundaries of this Court.

Petitioner commenced this federal habeas case by filing the pending Petition for Writ of Habeas Corpus (ECF 1.) Petitioner names as Respondents Leonard Oddo, the Warden of Moshannon; David O'Neill, the Director of ICE's Philadelphia Field Office; the Secretary of the United States Department of Homeland Security; and the Attorney General of the United States. He contends that he is being detained in violation of 8 U.S.C. § 1231(a)(6), as interpreted by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001), because his removal is not reasonably foreseeable. As relief, he seeks an order from this Court directing that he be immediately released to an order of supervision. (ECF 1, ¶¶ 27-29.)

Respondents have filed their Answer (ECF 6) and Petitioner has filed his Reply. (ECF 10.)

---

[1] Petitioner avers that he was not provided with a Notice of Revocation of his supervised release. (Pet's Ex. 3, ¶ 6, ECF 10-2 at 2.) When Petitioner's counsel asked Respondents' counsel to confirm that no Notice was provided, Respondents' counsel responded: "I do not believe there would be a Notice since the bond was cancelled, and [Petitioner] was no longer subject to bond conditions." (Pet's Ex. 4, ECF 10-3 at 1.)

B. <u>Discussion</u>

The purpose of a writ of habeas corpus is to challenge the legal authority under which an individual is being held in custody. *See, e.g.*, *Keitel v. Mazurkiewicz*, 729 F.3d 278, 280 (3d Cir. 2013). The general habeas statute at 28 U.S.C. § 2241 confers jurisdiction on this Court to hear both statutory and constitutional challenges to the lawfulness of Petitioner's detention by ICE. *See, e.g.*, *Zadvydas*, 533 U.S. at 687-88. Section 2241 provides that the writ of habeas corpus shall not extend to a detainee unless "[h]e is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3).

ICE is detaining Petitioner under the post-removal detention provision of the Immigration and Nationality Act ("INA"), which is codified at 8 U.S.C. § 1231(a). This statute provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). The noncitizen *must be detained* during this 90-day timeframe, *id.* § 1231(a)(2), which is "referred to as the 'removal period.'" *Id.*, § 1231(a)(1)(A).

If the noncitizen "does not leave or is not removed within the removal period," then he or she is normally subject to supervised release. *Id.* § 1231(a)(3). But § 1231(a)(6) provides that certain categories of noncitizens who have been ordered removed, including inadmissible and criminal noncitizens or noncitizens whom the Attorney General has determined are a risk to the community or are unlikely to comply with the order of removal, "*may be detained* beyond the removal period[.]" (Emphasis added.) The parties agree that Petitioner is currently being detained under § 1231(a)(6).

The text of § 1231(a)(6) does not contain an express limit on the duration a noncitizen can be detained under its authority. In 2001, the Supreme Court decided *Zadvydas v. Davis*, 533 U.S.

3

678 (2001). In it, the Supreme Court outlined the due process concerns that would be implicated by a statute permitting indefinite detention. *Id.* at 690-96. Invoking the canon of constitutional avoidance so that it did not have to decide whether § 1231(a)(6) violated the Fifth Amendment's Due Process Clause, the Supreme Court interpreted the statute to contain an implicit temporal limit. It held that the statute, "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States. It does not permit indefinite detention." *Id.* at 689.

The *Zadvydas* Court held that post-removal detention for six months is "presumptively reasonable." *Id.* at 701. Beyond six months, if removal is no longer reasonably foreseeable, continued detention is no longer authorized under § 1231(a)(6). Thus, at that point, the Supreme Court explained, a noncitizen could bring a claim in a federal habeas petition asserting that ICE no longer has the statutory authority for continued detention. *Id.* at 700-01. In such a proceeding, the Supreme Court instructed, the noncitizen must show there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]" *Id.* at 701. If the noncitizen does so, the burden would then shift to the government to produce "evidence sufficient to rebut that showing." *Id.*

When Respondents filed the Answer, Petitioner's detention had not yet exceeded *Zadvydas'* six-month presumptively reasonable period. Therefore, they argued, the Petition should be dismissed as premature. This argument is no longer valid because as of today's date Petitioner has been in continuous ICE custody for nine months.

Respondents also assert that Petitioner has not satisfied his burden of showing that his removal is not reasonably foreseeable. The length of Petitioner's current detention is relevant in evaluating this argument by Respondents as well. That is because, as this Court has explained in

4

another case before it in which it considered a *Zadvydas* claim, as time goes on a petitioner's burden will lessen as respondents' burden to justify continued detention will increase. *Roe v. Oddo*, No. 3:25-cv-128, 2025 WL 3030692, *7  (W.D. Pa. Oct. 30, 2025) (Haines, J.) ("In the context of the [*Zadvydas'*] burden shifting framework, there is an inverse relationship between the time the alien has been detained post-removal and the showing the Government must make in rebuttal…. For this reason, the same evidence that may be sufficient for the Government to rebut an alien's proffer of good reason to believe that there is no significant likelihood of removal when that alien has been in post-removal confinement for six months and one day may not likewise be sufficient when that same alien has been in post-removal confinement for twelve months and one day.")

In support of their contention that Petitioner's *Zadvydas* claim should be denied, Respondents have submitted the declaration of Deportation Officer Deven Bickle, dated February 6, 2026. (Resp's Ex. A, ECF 6-1 at 1-3.) He explains that in October 2025, ICE's Enforcement and Removal Operations ("ERO") requested assistance from Removal and International Operations ("RIO") in obtaining travel documents for Petitioner from the Embassy of Botswana. (*Id.*, ¶¶ 9-10, ECF 6-1 at 2.) In December 2025, the Embassy of Botswana denied the requested travel documents. (*Id.*, ¶ 12, ECF 6-1 at 2.) As a result, on December 24, 2025, RIO Headquarters ("HQ-RIO") requested travel documents from the Embassy of Angola. (*Id.*, ¶ 14, ECF 6-1 at 2.) On January 28, 2026, the Embassy of Angola requested a copy of the document used by Petitioner to enter the United States but it did not respond to HQ-RIO's request that Petitioner be interviewed. (*Id.*, ¶ 15, ECF 6-1 at 2.) According to Bickle, if the Embassy of Angola declines to issue travel documents for Petitioner the ERO field office will then contact HQ-RIO to initiate third county removal protocols. (*Id.*, ¶¶ 16-17, 19, ECF 6-1 at 2-3.)

According to Petitioner in his March 25, 2026, declaration, "[n]o county has ever issued me a valid passport or travel documents." (Pet's Ex. 3 ¶ 5, ECF 10-2 at 1.) He also explains:

> I understand myself not to be a citizen of any country, in other words stateless, since I was born in a refugee camp in Botswana and Botswana does not provide birthright citizenship to individuals born in refugee camps in that country whose parents are not citizens of that country…. I do not believe Angola recognizes me as a citizen. I was never registered there, never lived there, and never received any Angolan documentation…. At one point, I was asked to sign a citizenship verification and to provide biometric data for purposes of determining whether any country would recognize me. Signing those documents did not result in any country issuing me travel documents or agreeing to accept me.

(*Id.*, ¶¶ 2, 13, 14, ECF 10-2 at 1-2.)

Thus, the evidence submitted by the parties does not indicate that any additional progress has been made regarding HQ-RIO's December 24, 2025 request to the Embassy of Angola to issue travel documents for Petitioner, or that third county removal protocols have been initiated. Under these circumstances, and considering that at this point Petitioner has been detained for nine months and Respondents have not been able to remove him, Petitioner has satisfied his burden of showing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]" *Zadvydas*, 533 U.S. at 701. Accordingly, the burden has shifted to Respondent to produce "evidence sufficient to rebut that showing." *Id.* They have not satisfied their burden and, therefore, Petitioner's detention under § 1231(a)(6) is no longer lawful and the writ should be granted.[2]

---

[2] Petitioner also claims that Respondents violated applicable regulations when it took him into custody in September 2025. Respondents did not address this claim in the Answer. Because Petitioner is entitled to the writ on his *Zadvydas* claim, the Court need not decide whether the regulations at issue applied to Petitioner under the circumstances, whether Petitioner submitted sufficient evidence to show the regulations were actually violated, whether the Court has jurisdiction to even consider the issue, or if a violation of the regulations alone amount to a "violation of the *Constitution or laws*…of the United States[,]" as required to obtain habeas relief under § 2241(c)(3) (emphasis added). *See Son v. Rose*, 2026 WL 1093354, at *4 n.6 (M.D. Pa. Apr. 22, 2026) (noting the respondents' argument that the court lacked jurisdiction to consider the petitioner's habeas claims that the government violated its own regulations when it revoked the order of supervision, but deciding that it did not need to reach that issue); *id.* at *4 ("Ultimately, the petitioner's 'the government is not following its own rules' argument may not be viable on its own but, at a minimum, the same evidence to support that argument will be offered in support of any *Zadvydas* claim raised after the presumption period ends.")

**III.     CONCLUSION**

Based on the above, it is respectfully recommended that the Court grant the Petition and order Respondents to release Petitioner from detention forthwith under conditions of his preexisting Order of Supervision.

Under the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties are allowed 14 days from the date of this Report and Recommendation to file objections. Failure to do so will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).


June 3, 2026                                    /s/ Patricia L. Dodge
                                               PATRICIA L. DODGE
                                               UNITED STATES MAGISTRATE JUDGE

7